CITY of CORNING, Arkansas v. Leon WATSON

5-6007                          482 S.W. 2d 797

Opinion delivered July 24 1972

*Bryan J. McCallen,* for appellant.

*Burris & Berry,* for appellee.

J. Fred Jones Justice. This is an appeal by the City of Corning, Arkansas, from a decree of the Clay County Chancery Court in favor of the appellee, Leon Watson, in which a zoning ordinance of the City of Corning was found and decreed by the chancellor to be void and of no effect. The appellant relies on the following points for reversal:

> "The trial court erred in finding that the planning commission of the City of Corning, Arkansas, did not duly adopt and refer a preposed zoning ordinance to the legislative body of the city.
>
> The trial court erred in finding that the city council of the City of Corning, Arkansas, did not adopt a zoning ordinance, consisting of a text and a map, as recommended by its planning commission.
>
> The trial court erred in finding that the text and map of plaintiff's zoning ordinance were not properly filed and authenticated.
>
> City ordinance No. 6805 was duly published as required by law and by section 19-2404 of the 1968 Replacement of Arkansas Statutes Annotated of 1947.

The facts of the case warrant the injunctive relief prayed for by plaintiff."

The litigation in this case arose when the appellee, Leon Watson, applied for and obtained a building permit for the erection of a residential building on some lots he owned in Corning. Mr. Watson started immediate construction of his building but an error in issuing the permit was immediately discovered in city hall, and Mr. Watson was advised that his property was in a commercial zone rather than residential. He was advised the permit was being canceled and his permit fee refunded. Mr. Watson continued with the construction of his building until the City of Corning filed its complaint in this case praying an order enjoining Watson from proceeding further in the erection of the house and for removal of that portion of the building already constructed.

Watson answered by general denial and with an attack upon the validity of Municipal Ordinance No. 6805 whereby the City of Corning attempted to zone the city into use districts. Watson alleged that the purported ordinance was not published in form and manner required by law, specifically as required by Ark. Stat. Ann. § 19-2404 (Repl. 1968), and that the purported zoning code for the City of Corning had not been printed as a code in book form as required by the aforesaid section.

The chancellor decreed that the purported zoning ordinance No. 6805 was invalid and of no effect. He based the decree on his findings as follows:

"... and then it [referring to ordinance No. 6805] goes on to say, 'Be it ordained by the City Council of the City of Corning, Arkansas, and publishes a proposed Ordinance, Section 1, Section 2 and Section 3. And in Section 1, it states, 'Zoning Regulations. That the zoning regulations for the City of Corning, Arkansas, prepared by the Corning-Kilgore Area Planning Commission and adopted by it on August 28, 1967, are hereby adopted. Three copies of the zoning regulations above referred to are on file in the office

of the City Clerk and are available for public inspection.' Section 2 is in regard to the penalty for violation of the Ordinance and Section 3 has reference to the emergency clause. According to the testimony here, in Plaintiff's Exhibit 2, which appears to be a mimeographed copy of Zoning Regulations, Corning, Arkansas, prepared for the City of Corning, Kilgore Township Joint Planning Commission by City Planning Division, University of Arkansas, Fayetteville, Arkansas. There is nothing, Gentlemen, in the record, to show me the Planning Commission ever prepared any sort of Zoning Regulations at all. The testimony I have here is that after this meeting at the City Hall, apparently at the time they attempted or did pass this Ordinance 6805, the Ordinance 6805 says they adopted a zoning regulation that was prepared by the Corning-Kilgore area Planning Commission. There is nothing here that they adopted the Zoning Regulations that were prepared by the University of Arkansas at all, it just assumed that that was the regulations that the City Planning Commission attempted to adopt themselves, but there is nothing in the record here to show where the city Planning Commission adopted anything as far as I can tell. Also, just assume, for the sake of argument, that the City Planning Commission did adopt the regulations as prepared by the University of Arkansas, in thumbing through it here, I gather that what was prepared by the University of Arkansas was more or less guide lines as to how this Zoning Ordinance should be prepared. On page 4 in this exhibit, Plaintiff's Exhibit 2, you find Section 3 which says, 'Establishment of Districts and Map' and it goes ahead and sets out the following, 'The following Districts are hereby established' of R-Residential. C-1 Central Business District. C-2 General Commercial and I-Industrial. Section 3.2 under that, 'Zoning Map Established.' And states that, 'Such land and the district classification thereof shall be on the map designated as the 'Zoning Map of Corning, Arkansas, 'Dated and signed by the Mayor. I would assume if this is what the Planning Commission adopted, there

is nothing in this record at all to show that the Planning Commission ever adopted a Zoning Map or there is nothing in this record to show that the City Council of Corning ever adopted any zoning or planning map at all. I have a map here that has been presented to me here that they found in the City Clerk's Office down there but there is nothing to indicate on that map, that map was ever a part of the Ordinance or ever adopted by the City Council, and, I am not sure, but I don't believe there was even any endorsement on it showing the date or whether or not it was ever authenticated by even the Mayor of the City of Corning."

From the record before us in this case we are unable to say that the chancellor's findings and decree are against the preponderance of the evidence. Ark. Stat. Ann. § 19-2404 (Repl. 1968) provides as follows:

"All by-laws or ordinances after their passage shall be recorded in a book kept for that purpose and shall be authenticated by the signature of the presiding officer of the governing body and the clerk or recorder, and all by-laws or ordinances of a general or permanent nature and all those imposing any fine, penalty or forfeiture shall be published in some newspaper of general circulation in the corporation; provided, in incorporated towns where no newspaper is published, written or printed notice posted in five [5] of the most public places in said corporation shall be deemed a sufficient publication of any law or ordinance for incorporated towns, and it shall be deemed a sufficient defense to any suit or prosecution of such fine, penalty or forfeiture to show that no such publication was made. Provided, further, that ordinances establishing rules and regulations for zoning, construction of buildings, the installation of plumbing, the installation of electric wiring or other similar work where such rules and regulations have been printed as a code in book form, such code or provisions thereof may be published by such municipality by reference to title of said code without further publication or posting thereof; provided, however, that not less than

three [3] copies of such code shall be filed for use and examination by the public in the office of the city clerk or recorder of such municipality subsequent to the adoption thereof."

Under Ark. Stat. Ann.§§ 19-2801--19-2833 (Repl. 1968) municipal corporations are authorized to adopt and enforce building and zoning regulations and in connection therewith §§ 19-2825—19-2829 provide for municipal planning, adoption of plans and the creation, organization and functions of planning commissions with authority to prepare plans and recommendations for building and zoning regulations to be adopted by municipalities. When such plans are worked out by a planning commission and are to be adopted by a city, § 19-2830 provides as follows:

"a. PROCEDURE FOR ADOPTION AND FILING. All Plans, recommended ordinances, and regulations shall be adopted through the following procedure:

(1) The planning commission shall hold a public hearing on a plan or plans, ordinances and regulations proposed under this Act [§§ 19-2825—19-2831]. Notice of public hearing shall be published in a newspaper of general circulation in the city, at least one [1] time fifteen (15) days prior to the hearing.

(2) Following public hearing proposed plans may be adopted and proposed ordinances and regulations may be recommended as presented or in modified form by a majority vote of the entire planning commission.

(3) Following its adoption of a plan or plans and recommendation of ordinances and regulations, the planning commission shall certify such adopted plan or plans or recommended ordinances and regulations to the legislative body of the city for its adoption.

(4) The legislative body of the city may return the plan or plans and recommended ordinances and regulations to the planning commission for further study or re-certification, or by a majority vote of the entire membership, may by ordinance or resolution adopt plans and recommended ordinances or regula-

tions submitted by the planning commission. However, nothing in this act shall be construed to limit the city council's authority to recall the said ordinances and resolutions by a vote of a majority of the city council.

(5) Following adoption by the legislative body, the adopted plans, ordinances and regulations shall be filed in the office of the city clerk. The city clerk shall file, with the county recorder of the county or counties in which territorial jurisdiction is being exercised, such plans, ordinances and regulations as pertain to the territory beyond the corporate limits.

b. PROCEDURE AND AMENDMENTS. After adoption of plans and ordinances and regulations, and proper filing in the offices of city clerk and county recorder, no alteration, amendment, extension, abridgement. or discontinuance of the plans or ordinances may be made except in conformance with the above precedure, or by a majority vote of the city council.

c. CONFORMANCE TO ACT BY EXISTING COMMISSION. All plans, ordinances and regulations or amendments thereto shall comply with the provisions of this Act. Nothing in this Act shall invalidate any plans, ordinances or regulations duly adopted in accordance with the statutes in effect at the time of adoption. · No alteration or amendments may be made to said plans, ordinances and regulations, unless in conformity with the provisions of this Act."

Mr. Ben Baker testified that he is an abstracter of land titles and is a member of the city council of Corning. He stated that he had also served on the city planning commission. He testified that he was a member of the planning commission when public hearings were had in connection with city zoning. He testified that he specifically remembers attending a planning commission meeting pursuant to public notice when no one showed up at the meeting and after staying about 30 minutes the meeting was adjourned. He then testified as follows:

"Q. Can you tell the court whether proposed zoning ordinance codes and maps were adopted by the Planning Commission at that time?

A. It has been a long time ago and I don't know exactly when they were adopted, whether they were actually adopted at that meeting or whether they were adopted prior to that and that meeting was held for anyone who had objections to them. We were working under the direction of the University of Arkansas and there was a fellow in here helping us at that time and it has been quite a while ago and my memory is a little vague on it but the best I remember, we did adopt them and recommend it to the City Council, did pass an ordinance, etc.

Q. Are you familiar with this plat?

A. Yes, sir.

Q. Is this the map that was adopted at that time for Zoning Districts?

A. Yes, sir."

On cross-examination Mr. Baker testified that he was secretary of the planning commission and he then testified as follows:

"Q. Did you keep Minutes of the meetings?

A. Yes, sir.

Q. Do you have Minutes of the meetings?

A. I have but I didn't bring them. I didn't know I would need them. I don't have Minutes of the meetings when this ordinance came into existence, I don't have minutes for those meetings because I was not secretary at the time and all of the minutes were turned over to Mr. Fisk and Mr. Fisk passed away and all the minutes he had was lost, they could not be found. I have them in a rough form, they may not be typed up.

Q. Do you have Minutes that show this meeting of 1967?

A. The open meeting, the one that is published there?

Q. Yes, sir.

A. I do not have the minutes on that because they were turned over to Mr. Fisk.

Q. And they have been lost?"

A. Yes, everything I had, we have not been able to find any of it, the maps and things he had. I turned all of them over to him when he became Secretary and we have never found any of it."

Mr. Paul Mabry testified that he was city clerk of the City of Corning and had served in that capacity for seven yeras before resigning in 1970. He identified ordinance book No. 2 for the City of Corning and testified that the volume contained two zoning code books. The blue back copy being zoning regulations, and the pink back copy being subdivision regulations. This witness testified as follows:

"Q. How did these two volumes get into the ordinance book if you know?

A. I was requested to put these two volumes in here by the fellow that sent this from the University of Arkansas."

This witness testified on cross-examination that ordinance No. 6803 re-establishing the planning commission and designating Mr. Baker as a member thereof was passed on the same date as ordinance No. 6805, which was the 11th day of March, 1968. He testified that there was no city seal, or marks of authentication, on any of the instruments or copies testified to by him. Mr. Mabry testified that while he was city clerk of Corning three or four zoning maps were being used. He testified that one of the maps had been authenticated as the official zoning map but that he does not remember whether he put the city seal on

it or not. He testified that this map was filed in the circuit clerk's office, and that he assumes that it is still in that office. He testified that he personally recalls having filed the map in the circuit clerk's office.

Mr. Denzel Wright, deputy circuit and chancery clerk of Clay County, testified that he had searched the record books containing plats and maps in the circuit clerk's office and found no record of a zoning plat or map for the City of Corning.

From the overall record before us it would appear that the City of Corning set up a planning commission and with assistance from the University of Arkansas, the commission prepared plans for building and zoning regulations and recommendations for the city, and at this point the thread of events is lost from the record in this case.

Insofar as the record is concerned one could reasonably conclude that the Corning City Council simply lumped the proposed zoning regulations, plans, specifications, recommendations and maps prepared by, or for, the Corning-Kilgore Planning Commission between the pages of municipal ordinance record book No. 2 where is recorded ordinance No. 6805, reciting:

> "That the zoning regulations for the City of Corning, Arkansas, prepared by the Corning-Kilgore area Planning Commission and adopted by it on August 28, 1967, after public hearing held on August 28, 1967, are hereby adopted."

From the overall record before us in this case, we are unable to say that the findings and decree of the chancellor are against the preponderance of the evidence, so we conclude that the decree must be affirmed.

The decree is affirmed.